UNION NATIONAL BANK OF DETROIT v. JOHN W. WICKHAM, JR., ET AL.

1. AUTHORITY OF PARTNER TO BIND FIRM BY INDORSEMENT OF NEGOTIABLE PAPER.

Each member of a partnership for trading and business purposes may bind his firm as to third parties by receiving, selling and indorsing negotiable paper payable to the firm, in the usual course of partnership business.

A partner cannot, unless specially authorized, bind his firm to any one with knowledge of the facts, by a mere accommodation indorsement, nor by signing the firm name as surety.

2. BURDEN OF PROOF.

In an action upon a promissory note payable to the order of a partnership and bearing its indorsement, by a purchase thereof for value before due in the usual course of bu~ ~ess, the burden of proving that the same was received and indorsed by one partner only, and as a mere accommodation to the payee, rests upon the partnership.

In such case, when it is shown that the transaction was really one attempting by the act of one partner to pledge the credit of the firm by way of accommodation indorsement, the burden of proving his authority so to do rests with the holder of the note.

Union National Bank of Detroit v. John W. Wickham, Jr., et al.

BENTLEY, J.

The Union National bank of Detroit, Michigan, plaintiff in error, brought a suit in the court of common pleas upon a certain promissory note against the makers, Wickham & Co., and the indorsers, H. C. Post & Co., and the action was also against the individuals composing the partnership of Wickham & Co. and H. C. Post & Co., and also against those constituting the partnership of Post & Co. The note upon which suit was brought reads as follows :

"$5,000.                                                     "SANDUSKY, O., *September 14, 1892*.

"Four months after date I promise to pay to the order of H. C. Post & Co., five thousand dollars at the Union National bank of Detroit, Michigan. Value received. Due January 17, 1893.                                 WICKHAM & Co."

Indorsed : " Pay St. John B. Padburg, cashier or order. H. C. Post & Co."

The petition alleged there are no credits or payments on the note, that the same became due and payable on the 17th of January, 1893, and that demand of payment was duly made of the makers and notice thereof was given to the indorser, H. C. Post & Co., and that said note was duly protested for non-payment.

In the court of common pleas judgment was rendered in favor of plaintiff against Wickham & Co. and the individuals composing that firm, and against Halsey C. Post, one of the members of Post & Co., but the judgment was in favor of the other defendants sought to be charged.

The plaintiff sought to hold the firm of Post & Co., a firm composed of Benjamin F. Dwelle and Joseph W. Post, for the reason as the plaintiff claims, that H. C. Post & Co. were liable as indorsers upon this note and that it constituted one of the debts of H. C. Post & Co., and that while it was thus a debt of H. C. Post & Co., J. W. Post and B. F. Dwelle, as Post & Co., bought out the property of H. C. Post & Co., and assumed to pay the debts of that firm, among which, as it was claimed, was this note in suit. The firm of H. C. Post & Co., being composed of Halsey C. Post and Benjamin F. Dwelle, answered in the case, denying liability for the indorsement and Benjamin F. Dwelle also individually answered denying any liability upon the indorsement of H. C. Post & Co., claiming that that indorsement was not made in pursuance of the firm business and that it was simply made by H. C. Post individually, and although a member of H. C. Post & Co., he had no authority to make the indorsement.

H. C. Post & Co. and Benjamin F. Dwelle prevailed in the court below upon these issues. A bill of exceptions was allowed showing all the testimony heard by the court of common pleas, and it is claimed that the court erred in not holding H. C. Post & Co. and Post & Co. and Benjamin F. Dwelle liable upon the note.

The matter principally discussed before us was the question whether H. C. Post & Co. and Benjamin F. Dwelle, one of the members of that firm, could be held liable. Briefs have been presented and a large number of cases have been cited, some from this state and many from other states, and also text books of the law upon the subject of commercial paper have been cited, but when we consider the effect of the claims of counsel we perceive that they are really not substantially apart as to the real rule of law affecting cases of commercial paper given by partnerships or firms. The general rule of law upon the subject is certainly well settled and without discussing it at any length at all, I will simply say that the 14th Ohio, which was cited by one of the counsel, at page 601, thus quotes from Story on Partnership with approval : " In the text of Mr. Justice STORY it is said, each partner may bind the firm by contracts or engagements on behalf of the firm, in the ordinary trade and business of the firm, as by receiving or borrowing moneys, or *by drawing*, or *negotiating*, or *indorsing*, or *accepting bills and notes and checks*, or *other negotiable secu es*, or by doing any other acts, which are incidental or appropriate to such trade or business, according to the common course or usages thereof."

And we suppose that is the statement of the law upon that subject yet in this state. The court in that case, following the quotation I have just read, used this language: "It matters not what may be the nature of secret articles of copartnership, so far as strangers are concerned. They are rarely, if ever, published. The trading community look only to the general course of the acting partners; they judge from their daily intercourse with them of the extent of power which the articles confer."

And in the case of *Benninger* v. *Hess*, in the 41st Ohio St., page 66, the court upon the subject of the general law in cases of this kind says: "Among the implied powers of a partner one of the most important and necessary is that of borrowing money on the credit of the firm. The members of a trading partnership could not meet the sudden exigencies of commerce if they did not possess this power. Accordingly, it is now well settled, that in ordinary commercial partnerships, each partner has the right to borrow money for partnership purposes, in the firm name, and when credit is thus extended to a partnership, it will bind all the partners notwithstanding any private arrangement among themselves, if such arrangement be not known to those giving the credit. The loan must be made in good faith, for the use of the firm, and if so made, a subsequent misapplication of the money to the individual use of the partner, will not deprive the lender of his remedy against the other members of the firm." (Citing *Kleinhaus* v. *Generous*, 25 Ohio St., 667). "Nor will it be material in such case, that the other partners were not informed of the transaction, and repudiated it as soon as it came to their knowledge."

But it is also said in this case in the 14 Ohio, at page 600. "It may be admitted as a general rule of law, that one partner, in cases of ordinary partnership transactions, cannot bind his copartners by a mere accommodation acceptance, made in the name of the firm for the benefit of another person, so as to enable the holder, with knowledge of the facts, to recover upon it in a suit against the firm, without other proof, showing a subsequent assent or a prior authority."

And in the case in the 41 Ohio St,, from which I have read, it is also said: "It will not be disputed, that if it appears on the face of the bill or note, that it was signed by a partner in the name of a firm as surety, this will be notice to the world that it was not given in due course of partnership business. Nor will a different rule prevail although the fact that the firm is surety may not be written out in words, but simply inferred as a conclusion from the character of the note or the position of the names of the parties."

Now, from these quotations from these two cases, it can be seen that in Ohio there is no question as to what the law is as to the power of one partner to bind his firm by the issuing of notes or the indorsing of commercial paper. He may do that to carry on the partnership business in behalf of his firm, but he may not pledge the credit of the firm as a mere surety for the benefit of a third person in matters as to which his firm has no concern.

But there is another rule that we understand as fully settled by the authorities, and that is, that inasmuch as under the general rule a partner has the right to indorse the partnership name upon commercial paper in which the firm is interested, if commercial paper bearing such indorsement comes to the hands of a holder who is an innocent purchaser thereof for value, with no knowledge of any infirmity in the indorsement of the firm, the firm will be bound, although as a matter of fact the partner who made the indorsement in the particular case had not the real authority so to do.

This paper that was sued upon in this case was a paper upon which it appeared the firm of H. C. Post & Co. were interested. They were payees of that note and it bore their indorsement and transfer of interest, signed "H. C. Post & Co." Upon the face of it then, if it had fallen into the hands of an innocent purchaser for value, under the rules the holder or purchaser could recover against the firm of H. C. Post & Co. as indorsers, although it might be that the in-

dorsement was placed by one of the partners not authorized by the fellow members of his firm.

The question now presented in this case is, whether this note, apparently one in which the partnership had an interest, has come into the hands of an innocent purchaser for value. If it did, the judgment of the court of common pleas was wrong. If it did not the judgment was right. Now, it appears beyond question that as a matter of fact this paper was one in which the firm of H. C. Post & Co. had no real interest whatever. It was, as a matter of fact, given wholly in order to pledge the credit of H. C. Post & Co. for the accommodation and benefit of Wickham & Co. and for no other purpose, so that under the rules as I have read them from these books, H. C. Post had no authority, in fact, to make that indorsement, and if the Union National bank which sues here was not an innocent purchaser for value it would not be allowed to recover against H. C. Post & Co. or against any member of that firm, except the person actually making the indorsement. He had the right as an individual to give an accommodation indorsement for his friend or a friendly company.

Now, as bearing upon the question of the character of the holding of this note, we have read the testimony and it is frank and full and open. There is no question of weighing contradictions, for the manner in which this bank came to hold this note is testified to by its cashier, and there is no dispute about it. He says in substance, that some time before this note was given he had a conversation at his bank with John W. Wickham, one of the members of Wickham & Co. whom he knew and with whom he had transacted business before—whom he knew as representing Wickham & Co. A conversation occurred with them about a loan by the bank to Wickham & Co. of $5,000, and it was arranged there between them that the bank would loan Wickham & Co. this sum if they would send a note of Wickham & Co. with H. C. Post & Co. as indorsers. He says Wickham & Co. explained what they wanted to do with this money. That they were engaged in the fishing business (as he knew), and that they did not expect to realize from their catch until the expiration of four months, or a little short of that, and that they would need this money for their business for about that length of time, and that they wanted to borrow the money for that purpose. So that the cashier knew Wickham & Co. were borrowing the money, that it was a transaction wholly for their benefit, and that the indorsement to be secured from Post & Co. was for the mere accommodation of Wickham & Co.; that when the note came to be sent it was sent by mail by Wickham & Co., and that thereupon, in pursuance of the prior arrangement, he sent a draft or something, the proceeds of the note which he discounted, to Wickham & Co., all in a line with this understanding and purpose that have been mentioned. There is no doubt that the plaintiff's officers supposed that this note had the endorsement of Post & Co.; but there is no doubt, as I say, but that they knew the indorsement was for the mere accommodation of Wickham & Co.

There was no proof one way or the other as to the actual authority of H. C. Post to indorse this paper, no evidence given in the trial of the case as to whether or not he was actually authorized by Benjamin F. Dwelle to indorse this particular paper. If he had been, of course he would have been held upon it just the same as Halsey C. Post himself, who made the indorsement. So it becomes a matter of importance as to where the burden of proof lies.

We think it may be gathered from what is said in this 14th Ohio which I have read, that the burden of proof is upon the holder, in cases where he has notice or knowledge when he takes the note that the indorsement of the name of the firm is that of a mere surety, and that he must show in addition to the mere name upon it, the authority to make that kind of an indorsement, because it is not generally in the line of partnership business, and ordinarily one partner would have no right to make such an indorsement.

There will be found in the 17th Encyclopedia of Law, pages 1021 to 1023, a text upon this subject, which states that the burden of proof in a matter of this

'kind rests upon the holder of the note, that it is necessary for him to show in such cases that the indorsement was in fact made by authority, and a large number of cases are cited directly upon that point, and this is also held in a case in the 129th U. S., page 372, and though we have examined a number of cases cited, we find nothing to speak of on the other side of the question.

That being the state of the law and the state of the proof in this particular case, it follows that the court of common pleas was correct in holding that as against Benjamin F. Dwelle and against Post & Co. there could be no recovery upon this note under the circumstances, and, of course, there could be no recovery from those who assumed the debts of H. C. Post & Co., for these were not in fact the debts of the company; and the judgment as it stands will have to be affirmed.

Plaintiff in error excepts.